UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **WAYLON BAILEY** | **CIVIL DOCKET NO. 1:20-CV-01211** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **RANDELL ILES, ET AL** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

## MEMORANDUM RULING

Pending before the Court are the following motions: a MOTION FOR PARTIAL SUMMARY JUDGMENT [Doc. 16] filed by Plaintiff, Waylon Bailey, and a MOTION FOR SUMMARY JUDGMENT [Doc. 20] filed by Defendants, Randell Iles and Sheriff Mark Wood, in his official capacity, as Sheriff of Rapides Parish (collectively, the "Motions"). For the following reasons, the Court DENIES Plaintiff's motion and GRANTS summary judgment in favor of the Defendants.

## BACKGROUND

This matter arises out of an incident that began with a "posting" on Facebook during the early stages of the novel coronavirus (COVID-19) pandemic. On March 20, 2020, Waylon Bailey – allegedly "bored" due to the lockdown associated with COVID-19 – posted the following message on his personal Facebook feed:

> SHARE SHARE SHARE ! ! ! !
> JUST IN: RAPIDES PARISH SHERIFFS OFFICE HAVE ISSUED THE ORDER, IF DEPUTIES COME INTO CONTACT WITH "THE INFECTED" SHOOT ON SIGHT....Lord have mercy on us all. #Covid9teen #weneedyoubradpitt[1]

---

[1] This second "hashtag" allegedly refers to the science fiction movie "World War Z" which features the actor Brad Pitt "shooting zombies." [Doc. 16-1, p. 6].

1

[Doc. 16-1, p. 8]. Bailey claims he made the post because he thought it was "a funny and timely joke in light of the COVID-19 lockdowns." [Doc. 16-2, p. 2].

Detective Randell Iles ("Detective Iles" or "Iles"), then an investigator with the Rapides Parish Sheriff's Office, was asked by his supervisors to investigate the post to determine if it was a threat to public safety. [Doc. 20-3, p. 4]. Detective Iles testified that after investigating the post, he believed "it was an attempt to get someone hurt." [*Id.*]. Eventually, Iles located Bailey and several officers went to Bailey's home. [Doc. 16-1 p. 11]; [Doc. 20-1, p.7]. According to Bailey, a "SWAT team descended on [him]" with their guns drawn and pointed at him, ordering him to get on his knees. [Doc. 16-1, p. 11]. Bailey was then handcuffed and told he was under arrest at which point, he claims an officer told him that the next thing he posts on Facebook, "should be not to fuck with the Police". [Doc. 16-1, pp. 6, 11]. Detective Iles disputes this narrative and testified that he did not have his weapon drawn when he approached Bailey, but rather introduced himself and shook Bailey's hand – at which point Bailey indicated that he knew Iles was there because of his Facebook post. [Doc. 20-1, pp. 6-7]. Iles attests that he then advised Bailey of his rights, interviewed him, informed him that he was being arrested for terrorizing, and took him into police custody. [Doc. 20-1, p. 7].

Bailey was subsequently booked into the Rapides Parish Detention Center and posted bond the same day. [Doc. 1, ¶¶ 32-33, 44]. The Rapides Parish District Attorney's Office thereafter declined to prosecute the case – effectively ending Bailey's brief encounter with the criminal justice system. [Doc. 1, ¶ 2]; [Doc. 20-1, p. 5]. Bailey now sues Randell Iles and Rapides Parish Sheriff Mark Wood claiming

2

that he was arrested in violation of his constitutional rights and is suffering from anxiety and emotional distress as a result. [Doc. 1, ¶ 57].

## PROCEDURAL HISTORY

Bailey filed a Complaint in this Court on September 21, 2020, against Sheriff Wood and Detective Iles under 42 U.S.C. § 1983, alleging violations of his First and Fourth Amendment rights, as well as Louisiana state law claims of malicious prosecution and false arrest. [Doc. 1].

On February 16, 2022, Bailey filed a Motion for Partial Summary Judgment asking the Court to enter judgment establishing Defendants' liability as to his § 1983 claim for violation of the Fourth Amendment, his malicious prosecution claim, and his false arrest claim. [Doc. 16]. Defendants filed an Opposition to Bailey's Motion for Partial Summary Judgment on March 9, 2022, [Doc. 21], and simultaneously filed their own Motion for Summary Judgment seeking dismissal of all claims. [Doc. 20]. On March 28, 2022, Bailey filed an Opposition to the Motion [Doc. 26], and Replies supporting both Motions were subsequently filed. [Docs. 25, 29]. The Motions have now been fully briefed and are ripe for ruling.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The movant bears the burden of demonstrating the absence of a genuine dispute of material fact but need not negate every element of the nonmovant's claim. *Hongo v. Goodwin*, 781 F. App'x 357, 359 (5th Cir. 2019) (citing *Duffie v. United States*, 600 F. 3d 362, 371 (5th Cir. 2010)).  If the movant meets this burden, the burden then shifts to the nonmovant who is required to "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).  However, summary judgment cannot be defeated through "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)).

In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  The motion for summary judgment should be granted if the non-moving party cannot produce sufficient competent evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## DISCUSSION

I. Parties' Arguments

    A. Bailey's Arguments

Bailey asserts that his March 20, 2020, arrest for terrorizing, in violation of La. R.S. § 14:40.1, infringed upon his constitutional rights under the First and Fourth Amendments. [Doc. 1]. Bailey's claims largely rest on his assertion that Detective Iles lacked probable cause to arrest him, and, further, that no reasonable officer in the same situation would have thought that probable cause existed to make an arrest because there is no evidence that his actions meet either element of the terrorizing statute. [Doc. 16-1]. In this regard, Bailey contends that the facts do not show that he communicated the false information for the purpose of causing members of the public to be in fear for their safety, nor that he actually caused: (i) sustained fear in any member of the public, (ii) evacuation of a building, or (iii) public disruption. [*Id.*, pp. 21-23]. Bailey claims instead that his post was intended as a joke and that Detective Iles was, in fact, actually aware of his true intention. [*Id.*].

Bailey also seeks summary judgment under Louisiana state law for malicious prosecution and false arrest, arguing that although no criminal case followed his arrest, a probable cause affidavit was completed, which he contends constituted an affirmative step in furtherance of a criminal prosecution. [Doc. 25, p. 7]. Additionally, Bailey urges the Court to accept the notion that because the District Attorney "dismissed" the charge against him, there is a presumption that the arrest lacked probable cause.[2] [Doc. 16-1, p. 26]. Bailey posits that this shifts the burden

---

[2]    In fact, the District Attorney never initiated prosecution against Bailey.

to the Defendants to show that the arrest was based on probable cause and was without malice. [*Id*]. Bailey also asserts that his false arrest and malicious prosecution claims should prevail even if this Court finds that Detective Iles is entitled to qualified immunity because there is no such immunity for the Louisiana law claims. [Doc. 26, p. 21]. Finally, Bailey contends that Woods is liable for the state law claims under the theory of *respondeat superior*. [Doc. 16-1, pp. 26-27].

### B. Defendants' Arguments

Defendants seek summary judgment on Bailey's claims on the basis that Iles is entitled to qualified immunity against the alleged constitutional violations because there was probable cause for Bailey's arrest. [Doc. 20-1, pp. 15, 22]. In this regard, Defendants claim that Bailey has failed to adduce any evidence that the arrest was not supported by probable cause, or that Detective Iles was motivated by ill-will or acted in a reckless or callously indifferent manner. [*Id.*, p. 23]; [Doc. 21, p. 10].

Lastly, Defendants contend that Bailey has no viable claims under Louisiana law for malicious prosecution or false arrest. [Doc. 20-1, pp. 23, 26-27]. Specifically – again resting on their contention that Iles had probable cause to arrest Bailey and that a probable cause affidavit does not constitute the commencement of a criminal prosecution – Defendants argue that: (i) Bailey lacks sufficient evidence to meet the elements of a false arrest or malicious prosecution claim [Doc. 20-1, p. 23], [Doc. 21, p. 8], [Doc. 29, p. 5]; and (ii) that since there are no valid claims against Iles, Wood therefore cannot be found liable under the theory of *respondeat superior*. [Doc. 20-1, p. 27].

## II.   Qualified Immunity

The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation." *Ashcroft v. Iqbal*, 556 U.S. 662, 685, 129 S. Ct. 1937, 1953 (2009) (internal quotations and citations omitted). A qualified immunity defense is thus "an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009).

When reviewing a motion for summary judgment, the court must view all of the facts in the light most favorable to the non-moving parties and draw all reasonable inferences in their favor. But an assertion of qualified immunity alters the standard. Once qualified immunity is asserted, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017). Nonetheless, all inferences are still viewed in the light most favorable to the plaintiff. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework to determine if a plaintiff has overcome a qualified immunity defense. 533 U.S. 194 (2001). First, a court should determine whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. Second, a court must consider whether

7

the alleged conduct violated a "clearly established" right in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. A right is "clearly established" when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012). Therefore, qualified immunity applies in all cases but those where the official is "plainly incompetent" or "knowingly violate[s] the law." *Mullenix* 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### A. Fourth Amendment Violation

To overcome Iles' assertion of qualified immunity, Bailey must show that his Fourth Amendment rights were violated and that such rights were clearly established at the time of his arrest, such that a reasonable officer would have known that the arrest was unlawful. *See, Voss v. Goode*, 954 F. 3d 234, 238 (5th Cir. 2020).

It is well established that an arrest without a warrant is lawful if authorized under state law and supported by probable cause. *See, Virginia v. Moore*, 553 U.S. 164, 173 (2008). Probable cause for an arrest exists when there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). The experience and expertise of police officers should be considered when determining if a reasonably cautious person would find that a crime has been or will be committed. *Id.* at 246. Additionally, in determining whether a court should grant qualified immunity to an arresting officer, the law enforcement

officer need not show that his or her belief that an offense has been committed is correct or more likely so than not.  *Id*. (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).  Rather, a law officer need only show that he or she believed there was a "fair probability" that the violation occurred.  *Id*.

Here, the facts presented to the Court, even when accepted in the light most favorable to Bailey, show that probable cause existed for his arrest.  Bailey was arrested for violating Louisiana's terrorizing statute which in relevant part provides that:

> "Terrorizing is the intentional communication of information that the commission of a crime of violence is imminent or in progress or that circumstances dangerous to human life exists or is about to exist, with the intent of causing members of the public to be in sustained fear for their safety, or causing evacuation of a building, a public structure, or a facility of transportation; or causing serious disruption to the general public."

La. R.S. § 14:40.1(A).

Considering the totality of the circumstances surrounding Bailey's arrest, the Court finds that Detective Iles was reasonable in believing probable cause existed to arrest Bailey.  *See, United States v. Levine,* 80 F.3d 129, 132 (5th Cir. 1996) (noting that, "[p]robable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."). Although some facts surrounding the incident are in dispute, including Bailey's true intentions in making the Facebook post and the officers' actions in effecting his arrest, these issues are not determinative.  [Doc. 16-2, pp. 2-3]; [Doc. 20-1, pp. 6-7]; [Doc. 20-3, p. 4]; *Traver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).  Rather, as discussed below, Bailey has failed to adduce any evidence that Detective Iles did not then

9

perceive his Facebook post as an intentional communication of misinformation likely to cause fear and potential violence in the community. [Doc. 20-3, pp. 4-5]. To the contrary, the available evidence clearly demonstrates that Detective Iles was justified in his stated belief.

Context is critical to the analysis that follows. The subject Facebook post was made at the beginning of the COVID-19 pandemic, when Iles testified that "there was a lot of protests at the time in reference to law enforcement," and because of that he viewed Bailey's post as, "an attempt to get someone hurt." [*Id.*]. Indeed, there was much fear and uncertainty throughout the country in late March of 2020 resulting from the onset of the COVID-19 pandemic and the resulting closing of schools and workplaces and cancelling of public events. Detective Iles testified that he relied on the information related to him by his supervisors to the effect that they believed Bailey's post constituted a legitimate threat to public safety. [Doc. 20-3, p. 4]; *See, Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (finding that probable cause exists where a prudent officer would believe that a crime had been committed based on the "facts and circumstances within their knowledge and of which they had reasonably trustworthy information"). Additionally, Iles perceived this post as nefarious, rather than as a joke, because of Bailey's exhortations to "Share, share, share," and the "comments" under the post stating, "I'm reporting you. I'm reporting you" and "This is your fault...You made me do this." [Doc. 20-3, pp. 4-5]. Detective Iles further testified that he did not view Bailey's post as being made just "for a laugh or for [Bailey's] friends to just laugh about it," because Bailey "wanted it to go viral," and Detective Iles anticipated that "with everything going at the time this...was used as an attempt to get someone hurt." [Doc. 20-3, p. 11].

10

The Court finds that Detective Iles' belief in this regard was a reasonable one. Aside from the specific circumstances of Bailey's online activities, the context and circumstances of national and global affairs at the time of the post – March 20, 2020 – are critical to the Court's analysis, as they very well should have been to Bailey. On March 9, 2020, a Louisiana resident was first reported to have tested positive for COVID-19, with more residents testing positive in the following days. La. Exec. Dep't, Proclamation No. 25 JBE 2020, (March 11, 2020). On March 11, 2020, the World Health Organization (the W.H.O.) designated COVID-19 as a global pandemic. Also on March 11, 2020, Louisiana Governor John Bel Edwards declared a statewide public health emergency. La. Exec. Dep't, Proclamation No. 25 JBE 2020 (March 11, 2020). On March 12, 2020, Louisiana State University announced that all classes would be cancelled for two-weeks and would then resume online. On March 13, 2020, then-President Donald Trump declared a national emergency and issued a travel ban on non-United States citizens traveling from Europe. That same day Governor Edwards announced that all public schools in Louisiana grades K-12 would be closed. By March 19, 2020, prisoners were being released from jails in Louisiana and around the country because of the COVID-19 pandemic. Just two days after Bailey's post, on March 22, 2020, Governor Edwards issued a "Stay-at-Home" Order, directing all Louisiana residents to stay in their homes and to only leave for essential needs. La. Exec. Dep't, Proclamation No. 33 JBE 2020, (March 22, 2020). And only ten days after Bailey's post, on March 30, 2020, so many Americans were hospitalized with

COVID-19 in New York City that tents were set up in Central Park to serve as a makeshift hospital.[3]

Misinformation was also rampant in the early days of the COVID-19 pandemic. The spread of misinformation related to COVID-19 was so prevalent on social media and other internet sites that the W.H.O. termed it an "infodemic." For example, the W.H.O. had to post an infographic to their Instagram page explaining that although a healthy food, garlic had not been found to prevent COVID-19. The W.H.O. also had to dispel misinformation claiming that drinking bleach could cure the virus. False information circulated on social media purporting that a self-diagnosis of COVID-19 could be made by holding your breath for 10 seconds, that drinking water at least every 15 minutes would "wash the virus down" and prevent infection, and that drinking salt water would "kill" the virus. Drinking silver was also widely shared on Facebook as a treatment for COVID-19.

During the same timeframe as Bailey's post, a viral Facebook post falsely claimed that police officers in China had publicly killed a woman who was infected

---

[3]     This brief timeline was gathered from the following news articles: AJMC Staff, A Timeline of COVID-19 Developments in 2020, AJMC (Jan. 1, 2021), https://www.ajmc.com/view/a-timeline-of-covid19-developments-in-2020; WWL Staff, LSU cancels classes before March 20, moves to online platform rest of semester, 4WWL (March 12, 2020, 4:18 PM), https://www.wwltv.com/article/news/health/coronavirus/lsu-cancels-classes-before-march-20-moves-to-online-platform-for-rest-of-semester/289-3195e07c-5cfa-46ea-93df-b82b10a5fb90#:~:text=NEW%20ORLEANS%20%E2%80%94%20LSU%20face-to-face%20classes%20have%20been,30%2C%20the%20university%27s%20official%20Twitter%20account%20tweeted%20Thursday.; WWL Staff, Louisiana Coronavirus Updates: 36 diagnosed cases, All public schools closing on Monday, 4WWL, (March 13, 2020, 5:47 AM), https://www.wwltv.com/article/news/health/coronavirus/louisiana-coronavirus-updates-march-13/289-4de0d6c9-d9da-4ddf-adc3-2bf74acc294e; US jails begin releasing prisoners to stem COVID-19 infections, BBC News, (March 19, 2020), https://www.bbc.com/news/world-us-canada-51947802; Debbie White and Danielle Cinone, Triage tents set up in makeshift Central Park field hospital as NYC coronavirus death toll nears 700, The Sun, (March 30, 2020, 4:45 PM), https://www.thesun.co.uk/news/11283476/triage-tents-set-up-in-makeshift-central-park-field-hospital-as-nyc-coronavirus-death-toll-nears-700/.

with COVID-19. Another post, viral on Twitter, falsely stated that police in China shot and killed a woman who was trying to escape a quarantine. Social media companies acknowledged the use of their sites to spread misinformation leading Facebook, YouTube, Google, Microsoft, Reddit, and Twitter to issue a joint statement on March 16, 2020, stating that they were working together to limit the amount of false COVID-19 information shared on their sites. The W.H.O. subsequently reported that an estimated 6,000 people globally had been hospitalized because of COVID-19 misinformation in the early days of the pandemic.[4]

It has been just over two years since this transpired. We all remember the dramatic social and cultural changes that were thrust upon us in March of 2020. There was great uncertainty, fear, and in many cases, panic, in our community. Most of us subsequently lost friends and family members to this disease. It was in this context – with his community at perhaps its most vulnerable – that Bailey decided to

---

[4] This information was gathered from the following news articles: Matt Richtel, W.H.O. Fights a Pandemic Besides Coronavirus: An "Infodemic", New York Times, (February 6, 2020), https://www.nytimes.com/2020/02/06/health/coronavirus-misinformation-social-media.html; Gabby Landsverk, Holding your breath can't help you self-diagnose the coronavirus. Here's what you should do instead., Business Insider, (April 19, 2020, 10:51 AM); https://www.businessinsider.com/holding-breath-10-seconds-drinking-water-wont-cure-diagnose-coronavirus-2020-3; Reality Check team, Coronavirus: The fake health advice you should ignore, BBC News, (March 8, 2020), https://www.bbc.com/news/world-51735367; Jhooth Bole Kauva Kaate. Fact Check: Did police publicly kill coronavirus-infected woman in China?, India Today, https://www.indiatoday.in/fact-check/story/fact-check-did-police-publicly-kill-coronavirus-infected-woman-in-china-1645123-2020-02-10; Liselotte Mas, Did police kill a woman escaping a COVID-19 quarantine in China?, Yahoo! News, (February 19, 2020), https://uk.news.yahoo.com/did-police-kill-woman-escaping-172920113.html; Tyler Sonnemaker, Facebook, Google, Microsoft, Reddit, and Twitter just said they're working together to fight coronavirus misinformation, Business Insider, (March 16, 2020, 8:37 PM), https://www.businessinsider.com/facebook-google-youtube-microsoft-reddit-twitter-fight-coronavirus-covid19-misinformation-2020-3); Fighting misinformation in the time of COVID-19, one click at a time, World Health Organization, (April 27, 2021), https://www.who.int/news-room/feature-stories/detail/fighting-misinformation-in-the-time-of-covid-19-one-click-at-a-time.

make a "joke" to the effect that a local law enforcement agency had been directed to kill those who had been infected with COVID-19. This was not only irresponsible, but it might very well have been criminal. Indeed, the Court finds it well within the realm of possibility that his Facebook post, if it had indeed gone "viral," was likely to have caused sustained fear, anxiety, and perhaps injury and death among the people of central Louisiana.

The context of when Bailey made his Facebook post is not only relevant, but it is central to the Court's decision in this case. If Bailey made this post today, over two years after COVID-19 was declared a pandemic, with multiple different variations of vaccines available and with many people returning to work and normal life, he may be correct that most of the public (and indeed law enforcement) would be clear that this post was meant as a harmless joke.

But Bailey's Facebook post must be viewed in the context into which he intentionally placed it – a time when misinformation and fear were prevalent throughout the United States, including in Rapides Parish, Louisiana. When evaluating this context and viewing Bailey's post in light of the "totality of the circumstances," it is clear that Detective Iles was justified in believing probable cause existed to arrest Bailey for violating Louisiana's terrorizing statute.

The Court finds that Detective Iles was reasonable in concluding that Bailey had committed or was committing an offense. Because Bailey was arrested pursuant to probable cause, Detective Iles is entitled to qualified immunity and summary judgment on Bailey's § 1983 claim asserting violations of the Fourth Amendment.

### B. First Amendment Violation

Detective Iles is likewise entitled to qualified immunity from Bailey's claim that his First Amendment rights were violated by his arrest and detention. In asserting First Amendment claims against the Defendants, Bailey argues that he was arrested in retaliation for a "joke" that was "at the expense of the Rapides Parish Sheriff's Office" and was therefore arrested in retaliation for "protected political speech" in violation of his First Amendment right. [Doc. 1, ¶¶ 84-87].

The First Amendment protects an individual engaged in protected speech from retaliatory actions by government officials. *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019). In order to establish a claim of First Amendment retaliation, a plaintiff must show that: (1) he or she was engaged in constitutionally protected activity; (2) the actions of the defendant(s) caused him or her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant(s) adverse actions were substantially motivated by the exercise of the constitutionally protected conduct. *Kennan v. Tejeda,* 290 F. 3d 252, 258 (5th Cir. 2002). Additionally, when alleging a claim of false arrest in retaliation for exercising First Amendment rights, a plaintiff must show that the arrest was in fact retaliatory and lacked probable cause. *See, Roy v. City of Monroe*, 950 F.3d 245, 255 (2020); *Kennan*, 290 F.3d at 262. In this regard, the officer's retaliation must be a "substantial" or a "motivating factor" for the arrest. *Kokesh v. Curlee,* 14 F.4th 382, 396 (5th Cir 2021).

The first requirement Bailey must meet to assert a valid First Amendment retaliation claim is proving that his Facebook post was in fact constitutionally protected speech. Although the First Amendment prohibits "abridging the freedom

of speech," it has been precedent in the United States for over one hundred years that speech is not protected when "words used are used in such circumstances and are of such a nature as to create a clear and present danger," such as "falsely shouting fire in a theatre and causing panic." *Schenck v. United States*, 249 U.S. 47, 52 (1919). When evaluating whether speech creates a "clear and present danger," the context of the speech must be considered. *Id.* (noting that "in many places and in ordinary times the defendants in saying all that was said…would have been within their constitutional rights. But the character of every act depends upon the circumstances in which it is done.").

The Supreme Court further expounded on what is meant by "clear and present danger" fifty years later in *Bradenburg v. Ohio*. 395 U.S. 444 (1969). There, the Supreme Court affirmed that "advocacy [that] is directed to inciting or producing imminent lawless action and is likely to incite or produce such action" is not protected speech. *Id.* at 447. Here, Bailey was not arrested after advocating for a particular type of action, a particular political viewpoint, or for criticizing his government. Instead, Bailey's post publishing misinformation during the very early stages of the COVID-19 pandemic and time of national crisis was remarkably similar in nature to falsely shouting fire in a crowded theatre. Viewed in light of the surrounding circumstances, Bailey's Facebook post may very well have been intended to incite lawless action, and in any event, certainly had a substantial likelihood of inciting fear, lawlessness, and violence. *See, Abrams v. U.S.*, 250 U.S. 616, 621 (1919) ("Men must be held to have intended, and to be accountable for, the effects which their acts were likely to produce."). Considering the societal context and totality of the circumstances, this Court finds that Bailey's post was not protected speech, and that

16

his arrest was therefore not a violation of his freedom of speech under the First Amendment.

Even assuming, *arguendo*, that Bailey's speech was protected by the First Amendment, he still does not have a valid claim of a constitutional violation. As mentioned above, Detective Iles had probable cause to believe that Bailey's Facebook post violated Louisiana's terrorizing statute. *See,* Section II.A, *supra.* Accordingly, Detective Iles was acting pursuant to a Louisiana statute that, at the time of his arrest and still today, is presumptively constitutional and enforceable. *See*, *DeFillippo*, 443 U.S. at 37-38 (finding that probable cause to conduct an arrest existed when a presumptively valid ordinance had been violated, even when the ordinance was later deemed to be unconstitutional, and stating that "[p]olice are charged to enforce laws until and unless they are declared unconstitutional," noting an exception only when "a law [is] so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws"). Detective Iles therefore had no reason to believe that he was violating Bailey's First Amendment rights when arresting him.

Lastly, accepting as true Bailey's allegation that when he was arrested an officer laughed and told him that the next thing he posts on Facebook, "should be not to fuck with the Police," this alone is insufficient to show that Bailey's arrest was animated by a retaliatory motive, rather than probable cause. [Doc. 16-1, p. 6]; *See*, *Nieves* 139 S.Ct. 1715, 1725 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004)) (holding that a "particular officer's state of mind is simply 'irrelevant' and it provides 'no basis for invalidating an arrest.'"). Rather, because Bailey has failed to produce any evidence showing the absence of probable cause for his arrest, he cannot

succeed on his First Amendment retaliation claim. Detective Iles is therefore entitled to qualified immunity from Bailey's First Amendment claim under § 1983.

## III. State Law Claims

Having determined that the federal claims asserted by Plaintiff are properly dismissed, the Court must next decide whether exercising supplemental jurisdiction over the remaining state law claims is proper. The statutory factors set forth by 28 U.S.C. § 1367(c) and the common law principals of judicial economy, convenience, fairness, and comity guide district courts when determining whether to exercise jurisdiction over pendant state law claims. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 158-59 (5th Cir. 2011); *Carnegie-Mellon Univ.*, 484 U.S. 343, 350 (1988). 28 U.S.C. § 1367(c) provides that when the state law claim has a common nucleus of operative fact or arises out of the same transaction or occurrence as another federal claim, a federal court has the power to exercise jurisdiction over the state law claim. *See*, *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

The state law claims raised by Bailey are essentially the Louisiana equivalent of his federal law claims. These state law claims clearly involve the same common nucleus of operative fact and arise out of the same transaction or occurrence. For Bailey to prevail on his state law claims, there must be an absence of probable cause. The absence of probable cause is likewise a determinative factor in Bailey's claims of constitutional violations. Because the state law claims require the same legal determination as the federal claims, this Court will exercise jurisdiction over those claims.[5]

---

[5] The Court's dismissal of Bailey's § 1983 claims is based on qualified immunity – a doctrine that is not applicable to Bailey's state law claims. *See, Brown v. Miller*, 519 F.3d

18

### A. False Arrest

To prove a claim of false arrest under Louisiana law the plaintiff must show: "(1) detention of the person; and (2) the unlawfulness of the detention." *Richard v. Richard*, 74 So.3d 1156. 1159 (La. 2011). The plaintiff bears the burden of showing that the arrest was unlawful, or "made without color of legal authority." *Touchton v. Kroger Co.*, 512 So. 2d 520, 524 (3d Cir. 1987). An arrest is lawful if it is made pursuant to a valid arrest warrant or pursuant to probable cause. *See*, *Deville v. Marcantel*, 567 F.3d 156, 172 (5th Cir. 2009). As stated above, Detective Iles had probable cause to arrest Bailey for violating the Louisiana terrorizing statute. *See*, Section II.A, *supra*. Even accepting all of Bailey's factual assertions as true, he has failed to meet his evidentiary burden. Accordingly, Bailey's claim for false arrest fails because the arrest was made pursuant to a presumptively valid state criminal statute. Likewise, because Bailey has not asserted a valid claim against Iles for false arrest, Wood is not liable for false arrest under the doctrine of *respondeat superior*.

### B. Malicious Prosecution

To prove a claim of malicious prosecution the plaintiff must show: "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff.". *Jones v. Soileau*, 448 So.2d 1268, 1271

---

231, 239 (5th Cir. 2008). However, just as the existence of probable cause for Bailey's arrest defeats his claims under § 1983, the existence of probable caused for Bailey's arrest likewise defeats his state law claims.

(La. 1984). Bailey cannot establish a valid claim for malicious prosecution because he has not provided sufficient evidence to show the elements of the claim are met. As mentioned above, even when accepting all facts alleged by Bailey as true, it is clear that Detective Iles had probable cause to arrest Bailey for violating Louisiana's terrorizing statute. *See*, Section II.A, *supra*. Further, since no criminal charges were filed by the Rapides Parish District Attorney against Bailey, the Complaint fails to state a cognizable claim against the Defendants. *See*, *Systems Contractors Corp. v. Orleans Parish School Bd.*, 1996 WL 547414, at * 2 (E.D. La. Sept. 24, 1996) (holding that "There is no cause of action for malicious prosecution when no bill of information or indictment has been filed.").

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's MOTION FOR PARTIAL SUMMARY JUDGMENT [Doc. 16] is DENIED and Defendants' MOTION FOR SUMMARY JUDGMENT [Doc. 20] is GRANTED.

IT IS FURTHER ORDERED that all claims asserted by Plaintiff against Defendants, Randell Iles and Sheriff Mark Wood, are DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 20th day of July 2022.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE