# United States Court of Appeals for the Fifth Circuit

Certified as a true copy and issued
as the mandate on Nov 21, 2023

Attest: *Lyle W. Cayce*

Clerk, U.S. Court of Appeals, Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2023

Lyle W. Cayce
Clerk

No. 22-30509

WAYLON BAILEY,

*Plaintiff—Appellant,*

*versus*

RANDELL ILES, *in his individual capacity*; MARK WOOD, *in his official capacity as Sheriff*,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:20-CV-1211

Before HIGGINBOTHAM, GRAVES, and DOUGLAS, *Circuit Judges.*

## JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is REVERSED and REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that defendants-appellees pay to plaintiff-appellant the costs on appeal to be taxed by the Clerk of this Court.

# United States Court of Appeals
# for the Fifth Circuit

————————

No. 22-30509

————————

United States Court of Appeals
Fifth Circuit

**FILED**

November 21, 2023

Lyle W. Cayce
Clerk

WAYLON BAILEY,

*Plaintiff—Appellant,*

*versus*

RANDELL ILES, *in his individual capacity*; MARK WOOD, *in his official capacity as Sheriff*,

*Defendants—Appellees.*

————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:20-CV-1211

————————————————————

## ON PETITION FOR REHEARING EN BANC

Before HIGGINBOTHAM, GRAVES, and DOUGLAS, *Circuit Judges.*

DANA M. DOUGLAS, *Circuit Judge*:

Treating the petition for rehearing en banc as a petition for panel rehearing (5TH CIR. R. 35 I.O.P.), the petition for panel rehearing is DENIED. Because no member of the panel or judge in regular active service requested that the court be polled on rehearing en banc (FED. R. APP. P. 35 and 5TH CIR. R. 35), the petition for rehearing en banc is

No. 22-30509

DENIED.  We WITHDRAW our previous opinion and SUBSTITUTE the following:

Waylon Bailey filed suit under 42 U.S.C. § 1983 alleging violations of his First and Fourth Amendment rights when he was arrested as a terrorist for a post on Facebook.  The district court granted Detective Randall Iles and Sheriff Mark Wood's motion for summary judgment on qualified immunity grounds and dismissed Bailey's claims with prejudice.  We hold that Bailey's post was constitutionally protected speech, and that the grant of summary judgment was improper.  Accordingly, we REVERSE and REMAND for proceedings consistent with this opinion.

## I. Background

Bailey lives in Rapides Parish in central Louisiana.  On March 20, 2020—during the first month of the COVID-19 pandemic—he posted this on Facebook:



Bailey intended the post as a joke and did not intend to scare anyone.  The "hashtag" "#weneedyoubradpitt" referenced the zombie movie *World War Z,* starring Brad Pitt.  Bailey included the hashtag to "bring light to the fact

No. 22-30509

that it was a joke." He was bored during the COVID-19 lockdown, and used Facebook to keep in touch with friends and "make light of the situation."

Bailey's post was in response to another friend—Matthew Mertens—posting a joke about COVID, and Mertens understood Bailey's post to be a joke. The two continued to post comments underneath Bailey's post. Merterns posted "lol and he [referring to Bailey] talking about my post gonna get flagged 🤣 he wins." Bailey posted "this is your fault" and "YOU MADE ME DO THIS." Another person, who Mertens later identified as Bailey's wife, also jokingly commented "I'm reporting you."

Shortly after Bailey posted, Detective Randell Iles was assigned by the Rapides Parish Sheriff's Office (RPSO) to investigate. Iles' supervisors were concerned that the post was a legitimate threat; Iles testified at his deposition that he thought that the post was "meant to get police officers hurt." Iles looked at the post and the comments and concluded that Bailey had committed "terrorizing" in violation of Louisiana Revised Statute § 14:40.1. Iles had no information regarding anyone contacting RPSO to complain about the post or to express fear, or if any disruption had occurred because of the post.

Without seeking an arrest warrant, Iles and numerous RPSO deputies went to Bailey's house and arrested him. According to Bailey, he was working in his garage when as many as a dozen deputies with bullet proof vests and weapons drawn approached him and ordered him to put his hands on his head, after which Iles told him to get on his knees and handcuffed him. While Bailey was handcuffed, one of the deputies (not Iles) told him that the "next thing [you] put on Facebook should be not to fuck with the police" and the deputies laughed.

Iles advised Bailey of his rights, took a brief statement, and told him he was being charged with terrorizing. Bailey told Iles that the Facebook post

No. 22-30509

was a joke and apologized. In a supplemental investigative report completed after the arrest, Iles recounted that Bailey told him he had "no ill will towards the Sheriff's Office; he only meant it as a joke." Bailey deleted his Facebook post after Iles told him that he could either delete it himself or the RPSO would contact Facebook to remove it.

Iles later filled out an affidavit of probable cause for arrest without a warrant, noting that Bailey had been arrested for "Terrorizing" in violation of statute number "14.40.1." Under the heading "probable cause and facts of arrest," he wrote that "the suspect put up a Facebook post that Rapides Parish Sheriff's Office has order to 'Shoot on Sight' due to the Corona Virus outbreak. Arrested without incident." Iles testified at his deposition that he determined that the Facebook post was criminal based solely on the words of the post itself, and not based on anything Bailey told him.

RPSO announced Bailey's arrest on its own Facebook page, and he was identified in news reports as having been arrested for terrorism. Bailey's wife paid a bond to bail him out of jail. The district attorney subsequently dropped the charges and did not prosecute Bailey.

Bailey filed suit under 42 U.S.C. § 1983 alleging that Iles violated his First and Fourth Amendment rights. He also brought state law claims of malicious prosecution and false arrest against Iles and Sheriff Mark Wood in his official capacity as head of the RPSO under the doctrine of *respondeat superior* (collectively, "Defendants"). After discovery, Bailey moved for partial summary judgment on his Fourth Amendment, malicious prosecution, and false arrest claims, and Defendants moved for summary judgment on all of Bailey's claims, asserting, *inter alia*, qualified immunity as to his federal claims. The district court granted Defendants' motion and dismissed Bailey's claims with prejudice. Bailey appealed.

No. 22-30509

## II. Standard of Review and Qualified Immunity

"This court reviews de novo a district court's grant of summary judgment, applying the same standard as the district court." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (citation omitted). Normally, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). However, "[a] qualified immunity defense alters the usual summary judgment burden of proof" because the plaintiff, to overcome qualified immunity, "must rebut the defense by establishing a genuine [dispute of material fact] as to whether the official's allegedly wrongful conduct violated clearly established law." *Bey v. Prator*, 53 F.4th 854, 857 (5th Cir. 2022) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)) (alteration in original). "A genuine [dispute] of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin*, 864 F.3d at 328 (citation omitted). "All evidence is viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in that party's favor." *Id.* at 328–29 (citation omitted).

"The qualified immunity inquiry includes two parts": (1) "whether the officer's alleged conduct has violated a federal right"; and (2) "whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019). An officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Id.*

For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635,

No. 22-30509

640 (1987). The right may be clearly established by the Supreme Court's precedent or our own. *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018). "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

### III. Discussion

We first hold that Bailey's Facebook post is constitutionally protected speech. We then hold that the district court erred in granting qualified immunity to Detective Iles on Bailey's First and Fourth Amendment claims and erred in granting summary judgment to Defendants on Bailey's state law false arrest claim.

### A. Bailey's Facebook post was protected speech

Although neither party briefed the issue, the district court concluded *sua sponte* that Bailey's Facebook post was not constitutionally protected speech under the First Amendment because it created a "clear and present danger," equating "Bailey's post publishing misinformation during the very early stages of the COVID-19 pandemic and time of national crisis" as "remarkably similar in nature to falsely shouting fire in a crowded theatre" and citing to *Schenck v. United States*, 249 U.S. 47, 52 (1919). Relatedly, the district court held that "Bailey's Facebook post may very well have been intended to incite lawless action, and in any event, certainly had a substantial likelihood of inciting fear, lawlessness, and violence," citing *Abrams v. United States*, 250 U.S. 616, 621 (1919). This was error. As explained below, Bailey's Facebook post was constitutionally protected by the First Amendment.

No. 22-30509

"[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Alvarez*, 567 U.S. 709, 716 (2012) (quoting *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002) (internal quotation marks omitted)). The First Amendment's protections apply to jokes, parodies, satire, and the like, whether clever or in poor taste. *See, e.g. Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 54 (1988). That said, the First Amendment does not protect all speech, nor has it ever. "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571–72 (1942). "Content-based restrictions on speech have been permitted, as a general matter, only when confined to the few historic and traditional categories of expression long familiar to the bar." *Alvarez*, 567 U.S. at 717 (cleaned up). Two categories are relevant here: (1) "advocacy intended, and likely, to incite imminent lawless action"; and (2) "true threats." *Id.* (citing *Brandenburg v. Ohio*, 395 U.S. 444 (1969); *Watts v. United States*, 394 U.S. 705 (1969))

### 1. Incitement

At the outset, we note that in concluding that Bailey's post was unprotected speech, the district court applied the wrong legal standard. While *Schenck* and *Abrams* have never been formally overruled by the Supreme Court, the "clear and present danger" test applied in those cases was subsequently limited by the "incitement" test announced in *Brandenburg*. *See Shackelford v. Shirley*, 948 F.2d 935 (5th Cir. 1991) (recognizing the *Brandenburg* and subsequent cases "refined" the "clear and present danger" test). As the Fourth Circuit has explained, the "clear and present danger" test from *Schenck* and *Abrams*, "[d]evoid of any such limiting criteria as directedness, likelihood, or imminence . . . applied to a

No. 22-30509

wide range of advocacy that now finds refuge under *Brandenburg*," such that
"*Brandenburg* has thus been widely understood . . . as having significantly (if
tacitly) narrowed the category of incitement." *United States v. Miselis*, 972
F.3d 518, 532–33 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2756.

In *Brandenburg*, the Court held that "advocacy [that] is directed to
inciting or producing imminent lawless action and is likely to incite or
produce such action" is not protected by the First Amendment. 395 U.S. at
447. *Brandenburg* itself involved the broadcasting of a film of a Ku Klux Klan
rally which included a speech full of racist language in which a Klan leader
said that "four hundred thousand" KKK members would be "marching on
Congress" and that "if our President, our Congress, our Supreme Court,
continues to suppress the white, Caucasian race, it's possible that there
might have to be some revengeance taken." *Id.* at 445–46. The Court
reversed the speaker's conviction under Ohio's "criminal syndicalism" law
because it did not distinguish "mere advocacy" from "incitement to
imminent lawless action." *Id.* at 445, 448–49. Bailey argues that his
Facebook post did not meet *Brandenburg*'s requirements. We agree. A
comparison with Supreme Court precedent makes clear that Bailey's post
was not "advocacy . . . directed to inciting or producing imminent lawless
action" nor "likely to incite such action."

For example, in *Hess v. Indiana*, the Court reversed the disorderly
conduct conviction of a Vietnam War protestor who said "we'll take the
fucking street later" after sheriff's deputies moved the protestors from the
street to the sidewalk, holding that his speech was protected under
*Brandenburg* because it was not directed at any particular person or group and
was not likely to cause imminent unlawful action. 414 U.S. 105, 106–08
(1973). Consistent with *Brandenburg*'s imminency requirement, the Court
explained that speech that "amounted to nothing more than advocacy of
illegal action at some indefinite future time" was not unprotected incitement.

*Id.* at 108.  The Court also seemed to doubt that the speech at issue was even "advocacy" as contemplated by *Brandenburg*: "Since the uncontroverted evidence showed that Hess' statement was not directed to any person or group of persons, it cannot be said that he was advocating, in the normal sense, any action."  *Id.* at 108–09.  And the Court explained that even language that had a "tendency to lead to violence" was protected by the First Amendment because such language did not meet the stringent bar for words "intended to produce, and likely to produce, imminent disorder."  *Id.* at 109; *see also Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002) ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it.").

Applying the Supreme Court's incitement precedents, our court has emphasized that "encouragement of conduct that might harm the public such as the violation of law or the use of force" is protected by the First Amendment unless it is "directed to inciting or producing *imminent* lawless action" and is "*likely* to incite or produce such action."  *Herceg v. Hustler Mag., Inc.*, 814 F.2d 1017, 1021–22 (5th Cir. 1987).  "The crucial element to lowering the [F]irst [A]mendment shield is the imminence of the threatened evil."  *Id.* at 1022.

The *Brandenburg* requirements are not met here.  At most, Bailey "advocated" that people share his post by writing "SHARE SHARE SHARE."  But his post did not advocate "lawless" and "imminent" action, nor was it "likely" to produce such action.  The post did not direct any person or group to take any unlawful action immediately or in the near future, nobody took any such actions because of the post, and no such actions were likely to result because the post was clearly intended to be a joke.  Nor did Bailey have the requisite intent to incite; at worst, his post was a joke in poor taste, but it cannot be read as intentionally directed to incitement.  "Incitement cases usually concern a state effort to punish the arousal of a

No. 22-30509

crowd to commit a criminal action. The root of incitement theory appears to have been grounded in concern over crowd behavior." *Herceg*, 814 F.2d at 1023. "As is made clear in the Supreme Court's decision in *Hess*, the 'tendency to lead to violence' is not enough. Mere negligence, therefore, cannot form the basis of liability under the incitement doctrine any more than it can under libel doctrine." *Id.* at 1024 (citations omitted). In short, where the speech in *Brandenburg*, *Hess*, and numerous other Supreme Court decisions does not rise to the level of incitement, in no way can Bailey's Facebook post constitute incitement.

### 2. True threats

Despite Bailey's arrest for "terrorizing," his Facebook post was also not a "true threat" unprotected by the First Amendment. "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). In deciding whether speech is an unprotected "true threat," context is critical. *See Watts*, 394 U.S. at 706, 708 (considering the context, the expressly conditional nature of the statement, and the reaction of the listeners when evaluating whether a statement is a true threat).

On its face, Bailey's post is not a threat. But to the extent it could possibly be considered a "threat" directed to either the public—that RPSO deputies would shoot them if they were "infected"—or to RPSO deputies— that the "infected" would shoot back—it was not a "true threat" based on context because it lacked believability and was not serious, as evidenced clearly by calls for rescue by Brad Pitt. For the same reason, Bailey did not have the requisite intent to make a "true threat."

Comparison with a recent case also involving a social media post about COVID-19 supports our conclusion. In *United States v. Perez*, we held that

Facebook posts made in April 2020 in which the speaker falsely claimed that
he had paid a person infected with COVID-19 to lick everything in two
specific grocery stores in San Antonio was a true threat. 43 F.4th 437, 439,
443 (5th Cir. 2022). We explained that the "posts evinced an intent to spread
COVID-19" and "described actions that would have placed employees and
potential shoppers at two grocery stores at risk." *Id.* at 443. Further, a jury
found that the posts were reasonably believable, and "would have a
reasonable tendency to create apprehension that [their] originator will act
according to [their] tenor." *Id.* (quoting *United States v. Morales*, 272 F.3d
284, 287 (5th Cir. 2001)) (alterations in original). Bailey's absurd post is
entirely different from the believable threat in *Perez*, which, unlike Bailey's
post, threatened specific harm at specific locations and triggered complaints
from the public to law enforcement.

## B. Fourth Amendment claim

In deciding whether Iles is entitled to qualified immunity on Bailey's
Fourth Amendment claim, we consider first whether Iles violated Bailey's
constitutional rights when he arrested him for terrorizing. *Cole*, 935 F.3d at
451. Then, we consider whether the right was "clearly established" at the
time of the arrest.. *Id.*

"It is well established that under the Fourth Amendment a
warrantless arrest must be based on probable cause." *United States v. Castro*,
166 F.3d 728, 733 (5th Cir. 1999) (en banc). "Probable cause exists when the
facts and circumstances within the arresting officer's personal knowledge, or
of which he has reasonably trustworthy information, are sufficient to
occasion a person of reasonable prudence to believe an offense has been
committed." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (quotation
marks and citation omitted). "As a corollary, moreover, of the rule that the
police may rely on the totality of facts available to them in establishing

No. 22-30509

probable cause, they also may not disregard facts tending to dissipate probable cause." *Id.* (internal citation omitted). "[T]he ultimate determination of whether there is probable cause for the arrest is a question of law we review *de novo.*" *Castro*, 166 F.3d at 733.

The district court determined that there was probable cause to arrest Bailey. We disagree. Iles arrested Bailey for "terrorizing," in violation of La. R.S. § 14:40.1(A)(1).⊠ The relevant portion of the statute reads as follows:

> Terrorizing is the intentional communication of information that the commission of a crime of violence is imminent or in progress or that a circumstance dangerous to human life exists or is about to exist, with the intent of causing members of the general public to be in sustained fear for their safety; or causing evacuation of a building, a public structure, or a facility of transportation; or causing other serious disruption to the general public.

La. R.S. § 14:40.1(A)(1).

According to Louisiana courts, the crime of terrorizing requires (1) "false information intentionally communicated" and (2) "an immediacy element concerning the false information or threat that causes sustained fear or serious public disruption." *State ex rel. J.S.*, 808 So. 2d 459, 462 (La. Ct. App. 2001); *see also State ex rel. RT*, 781 So. 2d 1239, 1242 (La. 2001) ("Moreover, causation of 'sustained fear' is clearly an essential element of this part of the statute."). The statute also requires (3) "specific intent . . . i.e., the intent to cause members of the general public to be in sustained fear for their safety, or to cause evacuation of a public building, a public structure, or a facility of transportation, or to cause other serious disruption to the general public." *State v. Lewis*, 43 So. 3d 973, 985 (La. Ct. App. 2001).

No. 22-30509

The relevant facts and circumstances known to Iles at the time of the arrest were: (1) his supervisors asked him to investigate the post; (2) the content of the post itself; (3) Bailey was the author; (4) the comments below the post; (5) Bailey's statement to Iles that he meant the post as a joke and had no ill will toward RPSO; (6) nobody reported the post to law enforcement; and (7) the general social conditions during the early onset of the COVID-19 pandemic.

These facts and circumstances are not sufficient for a reasonable person to believe that Bailey had violated the Louisiana terrorizing statute. The statute's requirement that the communication have "an immediacy element concerning the false information" is lacking. *See J.S.*, 808 So. 2d at 462. Moreover, "causation of 'sustained fear' is clearly an essential element of this part of the statute." *RT*, 781 So. 2d at 1242. Here, however, there were no facts that would lead a reasonable person to believe that Bailey's post caused sustained fear. No members of the public expressed any type of concern. Even if the post were taken seriously, it is too general and contingent to be a specific threat that harm is "imminent or in progress." Nor would a reasonable person believe, based on these facts, that Bailey acted with the requisite "specific intent" to cause sustained fear or serious public disruption. *Lewis*, 43 So. 3d at 985.

In concluding otherwise, the district court gave undo consideration to (1) Iles' subjective beliefs and (2) social conditions at the onset of the COVID-19 pandemic. First, because probable cause is an objective standard, Iles' subjective belief that the post "meant to get police officers hurt" cannot supply probable cause; furthermore, Iles' explanation that his belief was based on there being "a lot of protests at the time in reference to law enforcement" is not plausible because Bailey was arrested in March 2020, while widespread protests concerning law enforcement did not begin until after George Floyd's murder in May 2020.

13

No. 22-30509

Second, the district court stated that the timing of the post during the first month of the COVID-19 pandemic—a time of dramatic change, fear, uncertainty, and misinformation—was "central" and "critical" to its probable cause analysis. While the social context of COVID-19 is certainly a relevant consideration, *see, e.g. Perez*, 43 F.4th at 442–43, the general fear and uncertainty around COVID-19 does not turn Bailey's otherwise-inane Facebook post into a terroristic threat under Louisiana law. *See RT*, 781 So. 2d at 1241–42 (holding that a student who told another student that it would be "easy to have a shooting" and described how he would carry out a school shooting did not violate the terrorizing statute because he had not threatened imminent harm and had not caused sustained fear even though the conversation took place "just a few days" after the Columbine tragedy amidst a "climate of fear"); *J.S.*, 808 So. 2d at 461, 463 (holding that a student who wrote "Everyone will die May 28, 1999. Be Ready." on a school bathroom wall one month after Columbine did not violate the terrorizing statute because there was no evidence that the graffiti caused sustained fear or serious disruption, "even in the atmosphere created by the Colorado tragedy").

Iles is "entitled to qualified immunity unless there was no actual probable cause for the arrest" and he was "objectively unreasonable in believing there was probable cause for the arrest." *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017), *as revised* (Mar. 31, 2017). Having determined that there was no actual probable cause for the arrest, we hold that Iles is not entitled to qualified immunity because he was "objectively unreasonable" in believing otherwise. In other words, Iles is not entitled to qualified immunity because no reasonable officer could have found probable cause to arrest Bailey for violating the Louisiana terrorizing statute in light of the facts, the text of the statute, and the state case law interpreting it.

No. 22-30509

Iles appears to argue that the law was not clearly established, and that he is therefore entitled to qualified immunity, because there is no Fifth Circuit precedent addressing warrantless arrests pursuant to the Louisiana terrorizing statute. But Bailey does not have to identify such a case to defeat qualified immunity. First, it is beyond debate that "[a] warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment." *Davidson*, 848 F.3d at 391. Second, whether it was "objectively reasonable" for Iles to believe there was probable cause is "assessed in light of legal rules clearly established at the time of the incident," which includes the statute's text and state case law interpreting it. *Alexander v. City of Round Rock*, 854 F.3d 298, 306-07 (5th Cir. 2017). As explained above, at the time of the incident the text of the terrorizing statute and state case law interpreting it made it clear that there was no probable cause here. Tellingly, while Bailey cites to multiple Louisiana cases supporting his interpretation of the statute, Iles cites to no Louisiana case law interpreting the statute otherwise.

Instead, Iles relies on a recent unpublished decision, *Stokes v. Matranga*, No. 21-30129, 2022 WL 1153125 (5th Cir. Apr. 19, 2022). In *Stokes*, this court granted qualified immunity to an officer who arrested a student for violating Louisiana's terrorizing statute when he posed for a photograph beside a drawing labeled "Future School Shooter" that was published on social media. *See generally id.* Though Iles argues that this case is instructive because likewise in *Stokes*, the officer was aware that the social media post was done in jest, we find it distinguishable in at least one important way. In identifying the officer's knowledge at the time of the arrest, we stressed that he was aware that parents had contacted the school to express concerns and ask about taking their kids out of school. *Id.* at *3. No such thing happened in this case. This, combined with Iles' knowledge that the post was a joke, severely undercuts probable cause for an arrest. As

No. 22-30509

noted by the dissent in *Stokes*, "[o]fficers may not disregard facts tending to dissipate probable cause," *id.* at *7 (quoting *Bigford*, 824 F.2d at 1218) (internal quotation omitted), and "[n]o decision by *any* court contradicts [this principle]." *Id.* (emphasis added).

Bailey also contends that Iles is not entitled to qualified immunity because the Facebook post was constitutionally protected speech, and it is clearly established that protected speech cannot provide probable cause for an arrest. For support, he cites numerous sister circuits. *See, e.g., Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006) ("An officer may not base his probable-cause determination on speech protected by the First Amendment."); *Mink v. Knox*, 613 F.3d 995, 1003-14 (10th Cir. 2010) ("It goes without saying that a government official may not base her probable cause determination on an 'unjustifiable standard,' such as speech protected by the First Amendment.") (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)); *Id.* at 1011 ("[S]peech, such as parody and rhetorical hyperbole, which cannot reasonably be taken as stating actual fact, enjoys the full protection of the First Amendment and therefore cannot constitute the crime of criminal libel for purposes of a probable cause determination.").

Having already determined that Iles is not entitled to qualified immunity, we need not reach this alternative argument. In any event, we observe that, at least in this case, Bailey's two arguments converge or overlap because the Louisiana terrorizing statute—with its requirements of imminency, causation of sustained fear, and specific intent—only criminalizes speech that is constitutionally unprotected because it falls within the incitement and true threat categories, as defined by the Supreme Court. In other words, because Bailey's speech is not incitement or a true threat, and is therefore constitutionally protected, there can be no probable cause to believe that he violated La. R.S. 14:40.1.

No. 22-30509

## C. First Amendment claim

On appeal, the parties dispute the nature of Bailey's First Amendment claim. "The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Defendants contend that in the district court Bailey limited himself to a First Amendment retaliation claim and thus forfeited any claim that his arrest was a direct limit on his First Amendment rights. Bailey responds that on these facts—where the basis for the arrest was speech itself—this is a distinction without a difference. According to Bailey, there is no dispute that Iles arrested Bailey because of his speech and no dispute that the arrest chilled his speech; rather, whether conceptualized as a retaliation claim or a direct infringement claim, the only issue is whether the speech was constitutionally protected. At this stage, we agree with Bailey that, regardless of how his claim is conceptualized, the district court erred in granting Iles qualified immunity.

The district court approached Bailey's First Amendment claim as a retaliation claim. To establish a claim for First Amendment retaliation, plaintiffs must show that "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan*, 290 F.3d at 258.

The district court determined that Bailey could not satisfy the first element because his speech was not constitutionally protected. As we explained in Section III.A, this was error. Bailey's Facebook post was protected by the First Amendment. The district court then held that even if

No. 22-30509

Bailey's speech was constitutionally protected, Iles' was still entitled to qualified immunity because there was probable cause to arrest Bailey pursuant to a "presumptively constitutional and enforceable statute." *See Michigan v. DeFellippo*, 443 U.S. 31, 37 (1979). As we explained in Section III.B, that too was error because there was no probable cause and Iles was objectively unreasonable in believing otherwise.

The district court also determined that Bailey could not satisfy the third element because one deputy telling him the "next thing [you] put on Facebook should be not to fuck with the police" did not create a genuine dispute as to whether the arrest was substantially motivated by "a retaliatory motive, rather than probable cause." We disagree, but for a more fundamental reason. Regardless of the unnamed deputy's comment, Iles admitted that he arrested Bailey at least in part because of the content of his Facebook post, rather than for some other conduct, *i.e.* Iles admitted that the arrest was at least "substantially motivated" by Bailey's speech. *Cf. Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018) (granting qualified immunity when the record failed to show that the police officer's actions were motivated by plaintiff's speech rather than her conduct of reaching for a doorknob against officers' instructions). Last, there is no dispute as to the second element, as Bailey's speech was chilled when he deleted his Facebook post in response to the arrest.

Further, Bailey has shown that Iles is not entitled to qualified immunity as to the First Amendment claim. Based on decades of Supreme Court precedent, it was clearly established that Bailey's Facebook post did not fit within one of the narrow categories of unprotected speech, like incitement or true threats. *See Brandenburg*, 395 U.S. at 445–49; *Hess*, 414 U.S. at 106–09;; *Watts*, 394 U.S. at 706, 708; *see also Kinney,* 367 F.3d at 350 ("The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents

relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." (quoting *Hope*, 536 U.S. at 740)). Thus, when Iles arrested Bailey, he violated Bailey's clearly established First Amendment right to engage in speech even when some listeners consider the speech offensive, upsetting, immature, in poor taste, or even dangerous. *See, e.g. Hustler Mag., Inc.*, 485 U.S. at 54; *Herceg*, 814 F.2d at 1021–24. The district court erred in concluding otherwise.

### D. State law claims

Bailey appealed only the dismissal of his state law false arrest claim and intentionally waived any challenge to the dismissal of his malicious prosecution claim. The parties agree that Bailey's state law false arrest claim turns on whether there was probable cause for his arrest and that the Fourth Amendment probable cause analysis is thus determinative of this claim. Further, the parties agree that if Iles is liable for false arrest, then Wood is vicariously liable under Louisiana law for the tort of his employee. As we have already determined that the district court erred in concluding that there was probable cause for Bailey's arrest, we reverse the district court's grant of summary judgment to Defendants on Bailey's state law false arrest claim.

### IV. Conclusion

For the foregoing reasons, we hold that the district court erred in concluding that Bailey's Facebook was constitutionally unprotected; erred in granting qualified immunity to Iles on Bailey's Fourth and First Amendment claims; and erred in granting summary judgment to Defendants on Bailey's state law false arrest claim. Therefore, we REVERSE the district court's grant of summary judgment to Defendants and REMAND for further proceedings consistent with this opinion.

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

November 21, 2023

Mr. Tony R. Moore
Western District of Louisiana, Alexandria
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

     No. 22-30509   Bailey v. Iles
                   USDC No. 1:20-CV-1211

Dear Mr. Moore,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Nancy F. Dolly, Deputy Clerk
                        504-310-7683

cc:  Ms. Nora Ahmed
     Mr. Corbin Barthold
     Mr. Thomas Arthur Berry
     Ms. Caroline Grace Brothers
     Mr. Harry Bradford Calvit
     Mr. Garret Scott DeReus
     Mr. Benjamin Field
     Ms. Deborah Ann Pearce
     Ms. Darpana Sheth
     Mr. Eugene Volokh
     Mr. Walter Rimmer Woodruff Jr.